IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIC GIORGIANTONIO**<br>6 Cripple Creek Road<br>Howell, NJ 07731<br><br>               Plaintiff,<br><br>    v.<br><br>**NEW PENN FINANCIAL, LLC d/b/a<br>SHELLPOINT MORTGAGE SERVICING**<br>c/o Corporation Service Company<br>Princeton South Corporate Center, Ste. 160<br>100 Charles Ewing Blvd.<br>Ewing, NJ 08628<br><br>and<br><br>**PARKER McCAY, P.A.**<br>c/o Philip A. Norcross, Esq., C.E.O.<br>9000 Midlantic Drive<br>Suite 300<br>Mount Laurel, NJ 08054<br><br>               Defendants. | CASE NO. 3:17-cv-4252<br><br>JUDGE<br><br><br><br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff Eric Giorgiantonio, by and through counsel, for his Complaint against Defendants New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing and Parker McCay, P.A., states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Eric Giorgiantonio ("Plaintiff" or "Mr. Giorgiantonio") is the owner of residential real property, located at and commonly known as 6 Cripple Creek Road, Howell, NJ 07731 (the "Property") which he, along with his family, has occupied as his primary principal residence at all times relevant to this Complaint.

2.     Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing (hereinafter "Shellpoint") is the current servicer of a Note executed by Mr. Giorgiantonio (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage"). Shellpoint services the Note and Mortgage (collectively referred to hereinafter as the "Loan") on behalf of The Bank of New York Mellon ("BONY").

3.     Shellpoint has been the servicer of the Loan since at least February 6, 2017.

4.     Shellpoint is doing business in the State of New Jersey as a business entity operating as a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

5.     Parker McCay, P.A. ("PM") is a Professional Association doing business in the State of New Jersey as a business entity operating as a "debt collector" as the term is defined by 15 U.S.C. §1692a(6).

6.     PM represents Shellpoint and BONY with respect to the Loan.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 as the action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA). This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X.

8.     This action also arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA").

9.     Plaintiff's debt arises out of transactions which are "primarily for personal, family or household purposes."  Plaintiff's debt is a "consumer debt" within the meaning of the FDCPA.

10.     This Court has supplemental jurisdiction to hear any and all state law claims that

are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

11.     Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Mr. Giorgiantonio resides and the Property is located in New Jersey.

## INTRODUCTION

12.     Plaintiff restates and incorporates all statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

13.     This case concerns material errors that the Defendants made by "dual tracking" by processing a loss mitigation application from Mr. Giorgiantonio while simultaneously pursuing a foreclosure action against Mr. Giorgiantonio between February 6, 2017 and the present.

14.     On or about October 1, 2015 BONY caused a foreclosure action to be filed against Mr. Giorgiantonio being known as "*The Bank of New York Mellon vs. Eric Giorgiantonio, et al.*," Docket No. 033169-15. Thereafter, in response to communication from Shellpoint, Mr. Giorgiantonio applied for a loan modification from Shellpoint and despite the pending application, Shellpoint, through PM, caused a foreclosure against Mr. Giorgiantonio's home to move forward by taking affirmative actions to sell Mr. Giorgiantonio's home, giving rise to Mr. Giorgiantonio's RESPA claims. On February 6, 2017, Shellpoint filed papers necessary to cause the Monmouth County Sheriff's office to schedule a sale of Mr. Giorgiantonio's property on the same day Mr. Giorgiantonio submitted his first loan modification application to Shellpoint. Mr. Giorgiantonio was "dual tracked" by Shellpoint because Shellpoint failed to withdraw Mr. Giorgiantonio's home from being set for a Sheriff's

sale in violation of the new federal regulations governing mortgage servicers and the manner in which regulated mortgage servicers must behave when a borrower's loss mitigation application is pending  prior to and during a foreclosure proceeding.

15.     At all times relevant herein, Shellpoint serviced Mr. Giorgiantonio's mortgage Loan and was responsible for processing and evaluating Mr. Giorgiantonio's loss mitigation applications for mortgage relief options, all as anticipated by 12 U.S.C. §§2601, *et seq*. and the Regulations promulgated thereunder.

16.     Shellpoint's actions in their loss mitigation effort did not meet the minimal standards of conduct for mortgage servicers under Regulation "X" and Shellpoint has caused Mr. Giorgiantonio great financial damage, humiliation, mental suffering, physical stress and emotional distress, further damage to his credit standing, and forced Mr. Giorgiantonio to incur attorneys' fees, all of which will appear more fully below.

17.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

18.     Mr. Giorgiantonio's Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1024.2(b).

19.     Shellpoint is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. §1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. §617.700.

20.     Mr. Giorgiantonio is asserting a claim for relief against Shellpoint for breach of the specific rules under Regulation X as set forth below.

21.     Mr. Giorgiantonio is also asserting claims for relief against Shellpoint and PM for violations of the FDCPA related to their beach of the specific rules under Regulation X as set forth below.

22.     Mr. Giorgiantonio's debt arises out of transactions which are "primarily for personal, family or household purposes." His debt is a "consumer debt" within the meaning of the FDCPA.

23.     Mr. Giorgiantonio has a private right of action for the claimed breaches under RESPA pursuant to 12 U.S.C. §2605(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and Mr. Giorgiantonio's attorneys' fees.

## OPERATIVE FACTS RELATING TO DUAL TRACKING
## COUNTS ONE TO SEVEN

24.     Plaintiff restates and incorporates all statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

25.     On December 1, 2015 Shellpoint caused a foreclosure action to be filed against Mr. Giorgiantonio being known as "*The Bank of New York vs. Eric Giorgiantonio, et al.*," Docket No. 033169-15 (the "Foreclosure Matter"). *Copy of the Docket Sheet attached as Plaintiff's* **Exhibit A**.

26.     On or around February 6, 2017, Shellpoint caused BONY to schedule a sheriff's sale of Mr. Giorgiantonio's property for May 22, 2017.  *Copy of the sheriff's sale docket sheet attached as Plaintiff's* **Exhibit B**.

27.     On or about February 6, 2017, Mr. Giorgiantonio submitted a loss mitigation application to Shellpoint (the "Application") via e-mail and facsimile.  **Copy of the Application**

5

and facsimile confirmation attached as Plaintiff's *Exhibit C*.

28.     The first page of the Application contained a third-party authorization form (the "Authorization") directing Shellpoint to direct all future correspondence to counsel's office, located at 57 W. Main Street, Freehold, NJ 07228.  *See Exhibit C*.

29.     On or about February 8, 2017, Mr. Giorgiantonio submitted a Homeowner Financial Worksheet and Social Security Benefit Account Statement to Shellpoint to supplement the Application.  **Copy of the subsequent submission and facsimile confirmation attached as Plaintiff's *Exhibit D*.**

30.     On or about February 20, 2017, Mr. Giorgiantonio, through counsel, sent a "Request for Information Pursuant to 12 CFR § 1024.36 and Notice of Error under C.F.R. § 1024.35" (the "RFI/NOE") to Shellpoint via USPS Certified Mail [Tracking No. 7015 0640 0002 4844 2900]. The RFI/NOE informed Shellpoint that they failed to timely acknowledge the Application as required by 12 CFR §1024.41. The RFI/NOE requested that Shellpoint confirm they received a completed loan modification application on or before February 8, 2017. The RFI/NOE also requested that Shellpoint confirm they had not made any requests for additional information since February 8, 2017.  **Copy of the RFI/NOE attached as Plaintiff's *Exhibit E*.**

31.     According to USPS Tracking, Shellpoint received the RFI/NOE on February 27, 2017.  **Copy of USPS Tracking attached as Plaintiff's *Exhibit F*.**

32.     Shellpoint responded to the RFI/NOE via correspondence dated March 8, 2017 (the "RFI/NOE Response"). **A copy of the response is attached hereto as Plaintiff's *Exhibit G*.** Borrower received the RFI/NOE response on March 13, 2017.

33.     In the RFI/NOE Response, Shellpoint confirmed receipt of the Application and

indicated that the following documents were required in order for the Application to be deemed complete: 1) Dodd-Frank Certification Form; 2) Non-Borrower Contribution Form; 3) Letter of Explanation explaining sources of deposits greater than $1,000; 4) Letter of Explanation explaining reason for the lack of business income on the 2015 Federal Tax Return; and 5) 2014 Federal Tax Return with all pages and schedules (the "Missing Documents Notice"). *See Exhibit G.*

34.     The RFI/NOE response enclosed correspondence dated February 9, 2017 which Shellpoint claimed to have sent to Mr. Giorgiantonio (the "Missing Documents Notice").  The RFI/NOE Response was the first time that Mr. Giorgiantonio received the Missing Documents Notice. According to Shellpoint, the Missing Documents Notice was mailed to an address wholly unrelated to Plaintiff:

> 2200 West County Line Road
> Jackson, NJ 08527

35.     Even if Shellpoint did send the Missing Documents notice on or around February 9, 2017, the fact that they disregarded the Authorization form and sent correspondence to the incorrect address demonstrates either that Shellpoint fabricated their notice in response to the RFI/NOE or that Shellpoint failed to exercise reasonable diligence in obtaining the necessary documents in order to complete the Application.

36.     The RFI/NOE Response also indicated "should you have any questions, you may contact Shellpoint's Escalation Department…"  This also does not constitute a proper response to the RFI/NOE as Shellpoint failed to either provide a written notification of the correction of the error OR provide a written notification that Shellpoint determined that no error occurred.

37.     On or about March 13, 2017, Mr. Giorgiantonio's counsel received the RFI/NOE Response described *supra*.

38.     Mr. Giorgiantonio sent Shellpoint, via USPS First Class Mail and Certified Mail [Tracking No. 7015 0640 0002 4844 3044], the documents requested by the Missing Documents Notice (the "Missing Documents"). **Copy of the missing documents correspondence is attached hereto as Plaintiff's *Exhibit H*.**

39.     According to USPS Tracking, Shellpoint received the Missing Documents on March 28, 2017. **Copy of the USPS Tracking attached hereto as Plaintiff's *Exhibit I*.**

40.     On or about March 12, 2017, Mr. Giorgiantonio, through counsel, sent a "Notice of Error Pursuant to Section 1024.35(b) of Regulation X" (the "NOE #1") to Shellpoint via USPS Certified Mail [Tracking No. 7015 0640 0002 4844 3013].  NOE #1 informed Shellpoint that they violated 12 C.F.R. §1024.41(c) by failing to review Mr. Giorgiantonio's complete application within thirty (30) days of receipt of the application. **Copy of NOE #1 attached as Plaintiff's *Exhibit J*.**

41.     According to USPS Tracking, Shellpoint received NOE #1 on March 20, 2017. **Copy of USPS Tracking attached as Plaintiff's *Exhibit K*.**

42.     Shellpoint responded to NOE #1 via correspondence dated April 28, 2017 (the "NOE #1 Response"). **Copy of NOE #1 Response attached as Plaintiff's *Exhibit L*.** In the NOE #1 Response, Shellpoint acknowledged the NOE #1 and informed Mr. Giorgiantonio that "Shellpoint previously issued your office documentation indicating the loss mitigation application received in February 2017 was incomplete. We have since received additional documentation, which was also reviewed and deemed to be incomplete."

8

43.     In the NOE #1 Response, Shellpoint requested the following documents: 1) Signed, dated letter indicating the date the self-employment began; 2) two (2) most recent months' bank statements for the non-borrower contributor and mortgagor; 3) signed, dated letter explaining any deposits greater than $1,000.00 on the bank statements; and, 4) most recent quarter Profit and Loss Statement. *See Exhibit L.*

44.     The NOE #1 Response also indicated, "Please note that Shellpoint has not received a complete loss mitigation application for review of the mortgagor's eligibility." This does not constitute a proper response to the NOE #1 as Shellpoint failed to provide either a written notification of the correction of the error OR a written notification that Shellpoint determined that no error occurred.

45.     On or about May 11, 2017, Mr. Giorgiantonio, through counsel, sent a "Notice of Error Pursuant to Section 1024.35 (b) of Regulation X" ("NOE #2") to Shellpoint via USPS Certified Mail [Tracking No. 7015 0640 0002 4844 3037]. **Copy of NOE #2 attached as Plaintiff's *Exhibit M*.**

46.     NOE #2 informed Shellpoint that they committed the following violations:

- Shellpoint failed to timely acknowledge the Application within 5 days of receipt;

- Shellpoint violated dual tracking regulations by scheduling a sheriff's sale of Mr. Giorgiantonio's home;

- Shellpoint failed to timely acknowledge NOE #1; and,

- Shellpoint failed to exercise reasonable diligence in collecting documents and information necessary to complete the Application.

47.     According to USPS Tracking, Shellpoint received the NOE #2 on May 16, 2017.
**Copy of USPS Tracking attached as Plaintiff's *Exhibit N*.**

48.     On May 12, 2017, Mr. Giorgiantonio's counsel e-mailed PM, informing them that Shellpoint was required to adjourn the May 22, 2017 sale per RESPA dual tracking regulations.
**Copy of E-mail correspondence attached as Plaintiff's *Exhibit O*.**

49.     Nonetheless, PM insisted that Shellpoint was permitted to cause the foreclosure sale to move forward.

50.     Due to Shellpoint's attempt to cause Mr. Giorgiantonio's home to be sold at foreclosure auction on May 22, 2017, Mr. Giorgiantonio were required to use statutory adjournments to stay the sale from May 22, 2017 to June 5, 2017, then again from June 5, 2017 to June 19, 2017, incurring a $28.00 fee for each adjournment.  *See Exhibit B*.

51.     As of the date of the Complaint, Shellpoint has yet to evaluate Mr. Giorgiantonio's Application.

52.     Shellpoint's actions again constituted prohibited "Dual Tracking" of borrowers by simultaneously actively pursuing foreclosure and processing a loss mitigation application, all to Mr. Giorgiantonio's great prejudice and damage.

53.     Instead, dual tracking by Shellpoint directly and proximately caused the following damages to Mr. Giorgiantonio:

> i. They had to retain and pay legal counsel to submit the follow up documents to Shellpoint, submit statutory adjournments to the Monmouth County Sheriff's Office at $28 per adjournment, submit multiple Notices of Errors to Shellpoint, and otherwise continue defending the foreclosure.

10

ii. They continue to suffer extreme emotional distress directly and proximately caused by not knowing day to day whether or not his home will be sold at Sheriff's sale. Mr. Giorgiantonio has owned his home for approximately thirty-one (31) years. As the Foreclosure Matter and sheriff's sale are public records, Mr. Giorgiantonio are continuously approached by friends and family inquiring into the pending foreclosure and sheriff's sale. Tentatively, there is a sheriff's sale scheduled on his property for June 19, 2017, and they have zero (0) statutory adjournments remaining.

iii. Mr. Giorgiantonio hoped and believed that submitting a complete loss mitigation application to Shellpoint would allow them to begin the long process of improving his credit standing, but because Shellpoint took longer to complete the loan modification review process than the regulations under RESPA provide for they were delayed in that effort. Shellpoint continued to report Mr. Giorgiantonio to Credit Reporting Agencies as delinquent on the Mortgage note, which left Mr. Giorgiantonio unable to obtain credit or insurance at reasonable rates. This is a situation that will extend much longer because of Shellpoint's conduct.

54. Throughout the entire ordeal, Mr. Giorgiantonio has simply wanted to obtain a modification, have the Foreclosure dismissed, and resume making timely, proper payments on his mortgage loan in order to begin to rehabilitate his credit, and most importantly, remain in his

family home.

55.     At the time of the filing of this Complaint, Shellpoint has had more than five

hundred eighty (580) consumer complaints lodged against them nationally, specifically

concerning the issue identified on the CFPB's consumer complaint database as "loan

modification, collection, foreclosure" related to mortgage products. Each such complaint is filed

and cataloged in the CFPB's publicly accessible online database, which can be located at the

following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

**COUNT ONE: AGAINST SHELLPOINT**
**MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.41(b)**

**(Violation of 12 C.F.R. § 1024.41(b) for failure to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application)**

56.     Plaintiff restates and incorporates herein all statements and allegations contained

in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

57.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the

provisions of the section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

58.     12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable

diligence in obtaining documents and information to complete a loss mitigation application."

59.     The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B) provides
that:

> Even if a servicer has informed a borrower that an application is complete (or notified the
> borrower of specific information necessary to complete an incomplete application), if the
> servicer determines, in the course of evaluating the loss mitigation application submitted
> by the borrower, that additional information or a corrected version of a previously
> submitted document is required, the servicer must promptly request the additional
> information or corrected document from the borrower pursuant to the reasonable
> diligence obligation in § 1024.41(b)(1). *See* § 1024.41(c)(2)(iv) addressing facially
> complete applications.

60.     Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that: "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

61.     Shellpoint failed to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Mr. Giorgiantonio's loss mitigation application.

62.     Mr. Giorgiantonio submitted a loss mitigation application on February 6, 2017 and supplemented the Application with additional documents on February 8, 2017. ***See Exhibits C & D***.

63.     The Application explicitly directed Shellpoint to send correspondence directly to Mr. Giorgiantonio's counsel's office, located at 57 W. Main Street, Freehold, NJ 07228. ***See Exhibit C***.

64.     Shellpoint did not acknowledge the Application and notify the Borrower of what documents were missing until one (1) month later in their RFI/NOE Response dated March 8, 2017. ***See Exhibit G***. Despite Shellpoint's claim that they timely acknowledged the Application, any such notice was sent to an address where Mr. Giorgiantonio would not have received it and disregarded the explicit authorization instructions on the Application.

65.     Shellpoint failed to exercise reasonable diligence in obtaining the documentation to complete Mr. Giorgiantonio's Application by waiting one (1) entire month to notify the

Borrower of what documents were missing.

66.    Even if Shellpoint did send the Missing Documents notice on or around February 9, 2017, the fact that they disregarded the Authorization form and sent correspondence to the incorrect address demonstrates that Shellpoint failed to exercise reasonable diligence in obtaining the necessary documents in order to complete the Application. ***See Missing Documents Notice in Exhibit G***.

67.    Shellpoint's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Mr. Giorgiantonio's loss mitigation application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

68.    Mr. Giorgiantonio then submitted to Shellpoint all the documents requested in the RFI/NOE Response (the "Missing Documents"). The Missing Documents submitted were: 1) Dodd-Frank Certification Form; 2) Non-Borrower Contribution Form; 3) Letter of Explanation explaining sources of deposits greater than $1,000; 4) Letter of Explanation explaining reason for the lack of business income on the 2015 Federal Tax Return; and, 5) 2014 Federal Tax Return with all pages and schedules.  ***See Exhibit H***.

69.    Shellpoint received these documents on March 28, 2017.  ***See Exhibit I***.

70.    Shellpoint again waited one (1) month before notifying Mr. Giorgiantonio that his Application was still incomplete through the NOE #1 Response dated April 28, 2017. ***See Exhibit L***.

71.    In the NOE #1 Response, Shellpoint requested the following outstanding information: 1) Signed, dated letter indicating the date the self-employment began; 2) Two (2)

most recent months' bank statements for the non-borrower contributor and mortgagor; 3) Signed, dated letter explaining any deposits greater than $1,000.00 on the bank statements; and 4) Most recent quarter Profit and Loss Statement.

72.     Each of the documents and pieces of information Shellpoint requested in the NOE #1 Response demonstrates Shellpoint's failure to exercise reasonable diligence in completing Mr. Giorgiantonio's Application:

### A. Self-employment Start Date

    a. Mr. Giorgiantonio already provided a year-to-date profit and loss statement from the period of 01/01/16 – 12/31/16 as part of the Application submitted on 02/06/17 and a letter of explanation informing Shellpoint that he did not have self-employment income during 2015 as part of the supplemental submission dated March 21, 2017 and received by Shellpoint on March 28, 2017.

### B. Two (2) most recent months' bank statements

    a. The Borrower had already submitted bank statements through January 25, 2017 as part of the Application submitted on 02/06/17. Had Shellpoint not delayed the document collection notices by waiting one (1) month for each one, they would not have needed updated bank statements. This document request is solely due to Shellpoint's delay in reviewing the Application.

### C. Signed, dated letter explaining any deposits greater than $1,000.00 on the bank statements

a.  The Borrower had already submitted this letter of explanation as part of his document submission dated March 21, 2017 and received by Shellpoint on March 28, 2017.

**D.  Most recent quarter Profit and Loss Statement.**

a.  Similar to the bank statement request, this request was due to Shellpoint's delay in reviewing Mr. Giorgiantonio's Application.

73.     Even if Shellpoint sent the Borrower the Missing Documents Notice on or around February 9, 2017 as alleged, Shellpoint still violated 12 C.F.R. §1024.41(b) by disregarding the Application instructions and sending the Missing Documents Notice to the incorrect address. *See Exhibit G*.

74.     Shellpoint's failure to properly notify Mr. Giorgiantonio of what documents, if any, were missing or incomplete, evidences Shellpoint's complete lack of diligence to complete the Application.

75.     Shellpoint's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Mr. Giorgiantonio's loss mitigation application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41.

76.     As a result of Shellpoint's failure to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete Mr. Giorgiantonio's loss mitigation application, Mr. Giorgiantonio suffered actual damages, including the attorney's fees incurred for the time in preparing the RFI/NOE, NOE #1, and NOE #2, the postage cost for mailing the NOE's, the attorney's fees incurred in submitting the follow up documents, and the

fees incurred in adjourning the sheriff's sale.

77.     Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

78.     As a result of Shellpoint's actions, Shellpoint is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.41(g)

### (Violation of prohibition on moving in support of foreclosure sale with facially complete loss mitigation application pending review)

79.     Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

80.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))."

81.     12 C.F.R. § 1024.41(b) (1) provides that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

82.     12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

83.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than

17

90 days before any foreclosure sale."

84.     12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

85.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

86.     12 C.F.R. §1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or *order of sale* unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

87.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(g) provides that:

> The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of

foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by §1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

88.    Mr. Giorgiantonio submitted a loss mitigation application on or about February 8, 2017.

89.    As Shellpoint failed to properly acknowledge the loss mitigation application by sending the notice required by 12 C.F.R. §1024.41(b)(2)(i)(B) as outlined, *supra*, the loss mitigation application was facially complete pursuant to 12 C.F.R. §1024.41(c)(2)(iv).

90.    As of February 8, 2017, there was a foreclosure sale of the Property scheduled for May 22, 2017. Therefore, the Application was submitted more than forty-five (45) days before the foreclosure sale. ***See Exhibit B***.

91.    Mr. Giorgiantonio's facially complete loss mitigation application was deemed to be a complete loss mitigation application for the purposes of 12 C.F.R. § 1024.41(g) throughout the time period from February 8, 2017 to the present.

92.    Shellpoint's actions, in causing BONY to make affirmative attempts to proceed with the May 22, 2017 sheriff's sale on Mr. Giorgiantonio's home after Mr. Giorgiantonio submitted a facially complete loss mitigation application, constitutes a clear, separate, and distinct violation of 12 CFR §1024.41(g).  Shellpoint's actions, after Mr. Giorgiantonio used his first statutory adjournment to adjourn the sale to June 5, 2017, in again causing BONY to make an affirmative attempt to proceed with the June 5, 2017 sheriff's sale on Mr. Giorgiantonio's

home after Mr. Giorgiantonio submitted a facially complete loss mitigation application, constitute a clear, separate, and distinct violation of 12 CFR §1024.41(g).

93.     As a result of Shellpoint's actions in causing its investor, The Bank of New York Mellon, to submit documentation necessary to proceed with a sheriff's sale on Mr. Giorgiantonio's home after Mr. Giorgiantonio submitted a facially complete loss mitigation application, caused Mr. Giorgiantonio actual damages, including the attorneys' fees incurred for the time in preparing the RFI/NOE, NOE #1, and NOE #2, the postage cost for mailing the NOE's, the attorneys' fees incurred in submitting the unnecessary follow up documents, and the fees incurred in adjourning the sheriff's sale.

94.     Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

95.     As a result of Shellpoint's actions, Shellpoint is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT THREE: MULTIPLE VIOLATIONS OF 12 C.F.R. §1024.41(c)

**(Failure to perform a review of a borrower's eligibility for any and all loss mitigation options available to a borrower within thirty (30) days of receipt of a complete loss mitigation application)**

96.     Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

97.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))"

98.     12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within

thirty (30) days of receiving the complete loss mitigation application, the servicer *must*: (i) Evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

99.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(2)(i)(B) provides that "[e]ven if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1)."

100.    As of February 8, 2017, there was a foreclosure sale of the Property scheduled for May 22, 2017. Therefore, the Application was submitted more than thirty-seven (37) days before the foreclosure sale.

101.    As of February 8, 2017, Mr. Giorgiantonio had submitted any and all missing documents and information requested by the written notice required pursuant to 1024.41(b)(2)(i)(B.

102.    Shellpoint notified Mr. Giorgiantonio via the RFI/NOE Response correspondence dated March 8, 2017, that the following documents were required to complete his Application: 1) Dodd-Frank Certification Form; 2) Non-Borrower Contribution Form; 3) Letter of Explanation

explaining sources of deposits greater than $1,000; 4) Letter of Explanation explaining reason for the lack of business income on the 2015 Federal Tax Return; and, 5) 2014 Federal Tax Return with all pages and schedules (the "Missing Documents"). *See Exhibit G*.

103.    Mr. Giorgiantonio submitted these documents to Shellpoint, and Shellpoint received these missing documents on March 28, 2017. *See Exhibits H and I.*

104.    Shellpoint's duplicative document requests in their April 28, 2017 NOE #1 Response correspondence further did not absolve them of their requirement to review Mr. Giorgiantonio's Application within thirty (30) days of March 28, 2017. *See Exhibit L*.

105.    As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required, within thirty (30) days of March 28, 2017, to: (i) Evaluate Mr. Giorgiantonio for any and all loss mitigation options available to Mr. Giorgiantonio; and, (ii) provide written notice to Mr. Giorgiantonio "stating [Shellpoint's] determination of which loss mitigation options, if any, it will offer to [Mr. Giorgiantonio] on behalf of the owner or assignee of the mortgage."

106.    That is, pursuant to 12 C.F.R. § 1024.41(c)(1), Shellpoint was required to evaluate Mr. Giorgiantonio for all loss mitigation options available to Mr. Giorgiantonio and send written notice to Mr. Giorgiantonio detailing their determination of Mr. Giorgiantonio's eligibility for such, on or before April 27, 2017.

107.    Shellpoint did not issue any requests to Mr. Giorgiantonio for any additional or missing information and/or documentation, of which Shellpoint was not already in possession, in order to supplement or otherwise complete the loss mitigation application during the time period from March 28, 2017 and April 27, 2017.

108.    Shellpoint did not evaluate Mr. Giorgiantonio for all loss mitigation options

available to Mr. Giorgiantonio and send written notice to Mr. Giorgiantonio detailing Shellpoint's determination of Mr. Giorgiantonio's eligibility for such, on or before April 27, 2017.

109.    Shellpoint's failure to review Mr. Giorgiantonio's complete loss mitigation application within thirty (30) days of receipt constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

110.    As a result of Shellpoint's actions in failing to review the Application within thirty (30) days of receipt of the complete application caused Mr. Giorgiantonio actual damages, including the attorney's fees incurred for the time in preparing the RFI/NOE, NOE #1, and NOE #2, the postage cost for mailing the NOE's, the attorney's fees incurred in submitting the unnecessary follow up documents, and the fees incurred in adjourning the sheriff's sale.

111.    Shellpoint's actions are believed to be a part of a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

112.    As a result of Shellpoint's actions, Shellpoint's is liable to Mr. Giorgiantonio for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT FOUR: MULTIPLE VIOLATIONS OF 12 C.F.R. §1024.35(d):**

**(Failure to Timely Acknowledge Notices of Error)**

113.    Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

114.    Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. § 1024.35(b), committed in regards the consumer's mortgage loan.

23

115.   12 C.F.R. § 1024.35(d) provides that a servicer

Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.

116.   Accordingly, on or about March 12, 2017, Mr. Giorgiantonio sent correspondence noticing an "[e]rror under 12 C.F.R. § 1024.35(b)(11) (the "NOE #1") to Shellpoint via U.S. Certified Mail [Receipt No. *7015 0640 0002 4844 3013*]].  ***See Exhibit J***.

117.   According to USPS Tracking, Shellpoint received the NOE #1 on March 20, 2017.  ***See Exhibit K***.

118.   Therefore, Shellpoint was required to acknowledge NOE #1 by no later than March 27, 2017.

119.   Mr. Giorgiantonio sent NOE #1 to the address which Shellpoint has designated for borrowers to send Notices of Errors.

120.   Mr. Giorgiantonio, through NOE #1, alleged that Shellpoint committed an error in Shellpoint's failure to review the Application within thirty (30) days of receipt of the Application.

121.   At no point between March 20, 2017 and March 27, 2017 did Shellpoint send correspondence to Mr. Giorgiantonio acknowledging receipt of the NOE.

122.   In fact, Shellpoint only first acknowledged NOE #1 via the NOE #1 Response correspondence dated April 28, 2017, well after the deadline required by 12 C.F.R. 1024.35(d). ***See Exhibit L***.

123.   Shellpoint's failure to timely acknowledge NOE #1 constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35.

24

124.    On or about May 11, 2017, Mr. Giorgiantonio sent correspondence noticing an "[e]rror under 12 C.F.R. § 1024.35(b)(11)" (the "NOE #2") to Shellpoint via U.S. Certified Mail [Receipt No. *7015 0640 0002 4844 3037]*].  ***See Exhibit M***.

125.    According to USPS Tracking, Shellpoint received NOE #2 on May 16, 2017.  ***See Exhibit N***.

126.    Therefore, Shellpoint was required to acknowledge NOE #2 by no later than May 23, 2017.

127.    Mr. Giorgiantonio sent NOE #2 to the address which Shellpoint has designed for borrowers to send Notices of Errors.

128.    As of the date of this Complaint, Shellpoint has yet to send correspondence to Mr. Giorgiantonio acknowledging receipt of NOE #2.

129.    Shellpoint's failure to timely acknowledge NOE #2 constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35.

130.    Shellpoint's failures to acknowledge NOE #1 and NOE #2 caused Mr. Giorgiantonio actual damages including the attorney's fees incurred for the time in preparing the NOE #2, the postage cost for mailing the NOE #2, the attorney's fees incurred in submitting the unnecessary follow up documents, and the fees incurred in adjourning the sheriff's sale.

131.    Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

132.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FIVE: MULTIPLE VIOLATIONS OF 12 C.F.R. §1024.35

### (Failure to Properly Respond to Notices of Error)

133.    Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

134.    Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. § 1024.35(b), committed in regards the consumer's mortgage loan.

135.    12 C.F.R. § 1024.35(d) provides:

(e) *Response to notice of error.* (1) *Investigation and response requirements.* (i) *In general.* Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

136.    RFI/NOE informed Shellpoint that they violated 12 C.F.R. §1024.41 by failing to acknowledge the Application within the requisite five (5) day timeframe.  ***See Exhibit E***.

137.    According to USPS Tracking, Shellpoint received the RFI/NOE on February 27, 2017.  ***See Exhibit F***.

138.    Shellpoint responded to the RFI/NOE via correspondence dated March 8, 2017 (the "RFI/NOE Response").  ***See Exhibit G***.

139.    In the RFI/NOE Response, Shellpoint had a duty to either correct the errors references in NOE #1 or conduct a reasonable investigation and provide an explanation that no error occurred, pursuant to 12 C.F.R §1024.35.

140.    RFI/NOE Response failed to do either.  Instead, it only proceeded to inform Mr. Giorgiantonio that his Application was incomplete.  *See Exhibit G*.

141.    Furthermore, RFI/NOE Response failed to provide a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance as required by 12 C.F.R. §1024.35.  *See Exhibit G*.

142.    Shellpoint's failure to properly respond to the RFI/NOE constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35.

143.    On or about March 12, 2017, Mr. Giorgiantonio, through counsel, sent a "Notice of Error Pursuant to Section 1024.35 (b) of Regulation X" (the "NOE #1") to Shellpoint via USPS Certified Mail [Tracking No. 7015 0640 0002 4844 3013].  NOE #1 informed Shellpoint that they violated 12 C.F.R. §1024.41(c) by failing to review Mr. Giorgiantonio's complete application within thirty (30) days of receipt of the application.  *See Exhibit J.*

144.    According to USPS Tracking, Shellpoint received NOE #1 on March 20, 2017. *See Exhibit K*.

145.    Shellpoint responded to NOE #1 via correspondence dated April 28, 2017. *See Exhibit L.*

146.    In NOE Response #1, Shellpoint had a duty to either correct the errors references in NOE #1 or conduct a reasonable investigation and provide an explanation that no error

27

occurred, pursuant to 12 C.F.R §1024.35.

147.   NOE Response #1 failed to do either.  Instead, the Response only proceeded to inform the Borrower that his Application was incomplete.

148.   Furthermore, NOE #1 Response failed to provide a statement of the Borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance as required by 12 C.F.R. §1024.35.

149.   Shellpoint's failure to properly respond to Mr. Giorgiantonio's NOE #1 constitutes a clear, separate, and distinct violation of 12 C.F.R. §1024.35 and caused Plaintiff actual damages including the attorney's fees for the time spent and the fees incurred in adjourning further out the sheriff's sale and the attorneys' fees incurred in preparing the May 22, 2017 NOE.

150.   Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

151.   As a result of Shellpoint's actions, Shellpoint is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees

## COUNT SIX: AGAINST PM

### (Violation of the FDCPA, 15 U.S.C. § 1692, *et seq.*)

152.   Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

153.   PM took the actions described, *supra*, in an attempt to collect a debt represented

28

by the Loan.

154.   PM violated 15 U.S.C. §1692(e)(5), by threatening to take an action— having Mr. Giorgiantonio's home sold on May 22, 2017 and again on June 5, 2017 —that cannot legally be taken as Mr. Giorgiantonio had a complete loss mitigation application pending more than thirty-seven (37) days before the initial sheriff's sale date of May 22, 2017.

155.   PM violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt, specifically, PM threatened to sell Mr. Giorgiantonio's home despite Mr. Giorgiantonio having a complete loss mitigation application pending more than thirty-seven (37) days before a sheriff's sale.

156.   On or about May 10, 2006, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a mortgage loan on his principal residence.

157.   The FDCPA, 15 U.S.C. § 1692f, provides, *inter alia*, that a Debt Collector may not use any unfair or unconscionable means to collect or attempt to collect the alleged debt.

158.   PM's conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for the Plaintiff's rights.

159.   As a result of PM's actions, Plaintiff demand judgment awarding: compensatory damages; all such other damages as allowed by law; costs of suit; attorneys' fees; and granting such other relief as this Court may deem equitable and just.

## COUNT SEVEN: AGAINST SHELLPOINT

### (Violation of the FDCPA, 15 U.S.C. § 1692, *et seq*.)

160.    Plaintiff restates and incorporates herein all statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

161.    Shellpoint took the actions described, *supra*, in an attempt to collect a debt represented by the Loan.

162.    The FDCPA, 15 U.S.C. § 1692e(5), provides, *inter alia*, that a Debt Collector may not threaten to take any action that cannot legally be taken or that is not intended to be taken.

163.    Shellpoint, in seeking to proceed with the sheriff's sale of Mr. Giorgiantonio's home, despite RESPA dual tracking guidelines prohibiting such, violated 15 U.S.C. §1692(e)(5).

164.    The FDCPA, 15 U.S.C. § 1692e(10), provides, *inter alia*, that a Debt Collector may not use any false representation or deceptive means to collect a debt.

165.    Shellpoint, in failing to exercise reasonable diligence in collecting documents and information to complete the Application and falsely declaring that the Application was incomplete,  violated 15 U.S.C. §1692(e)(5).

166.    15 U.S.C. § 1692f, provides, *inter alia*, that a Debt Collector may not use any unfair or unconscionable means to collect or attempt to collect the alleged debt.

167.    Shellpoint, in failing to exercise reasonable diligence in collecting documents and information to complete the Application and falsely declaring that the Application was incomplete,  violated 15 U.S.C. §1692(f).

30

168.    Plaintiff have expended numerous hours consulting with his attorneys as a result of Shellpoint's deceptive collection actions.

169.    Plaintiff have suffered emotional distress as a direct consequence of Shellpoint's unlawful attempts to collect a debt.

170.    As a result of Shellpoint's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Shellpoint herein.

## CONCLUSION

171.    Defendant Shellpoint's "dual tracking" and delays in reviewing the loan modification for Mr. Giorgiantonio in this case are consistent with their continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 CFR §1024.41 et seq. Defendant's conduct is part of a pattern and practice and, pursuant to 12 USC §2605 (f)(1)(B), Plaintiff is entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R. §1024.41 and §1024.35.

172.    As a direct and proximate result of Defendants' conduct and the distinct and ongoing violations above enumerated, Plaintiff suffered actual damage in the form of embarrassment with his neighbors, wasted time, frustration, and humiliation along with the emotional distress that follows from having his home put up for sheriff's sale. Plaintiff was forced to incur attorneys' fees and costs to investigate and defend the foreclosure action pending against him, and attorneys' fees to investigate and prepare his suit, and has suffered further damage to his already weakened credit profile.

31

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment against

Defendants for the following:

A.   For Plaintiff's actual damages, costs, and reasonable attorney fees;

B.   For statutory damages of up to Two Thousand Dollars ($2,000.00) as to each of

Counts One through Five against Shellpoint;

C.   For statutory damages of up to One Thousand Dollars ($1,000) as to Count Six

against Parker McCay, P.A.;

D.   For statutory damages of up to One Thousand Dollars ($1,000) as to Count Seven

against Shellpoint;

E.   Punitive damages; and,

F.   Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Javier L. Merino* _____
Javier L. Merino
DANN & MERINO, P.C.
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
201-355-3440
216-373-0536 Fax
notices@dannlaw.com

*/s/ Ira J. Metrick* _____
IRA J. METRICK, Esq.
57 W. Main Street
Freehold, NJ  07728
732-462-7000
732-863-1949 Fax
ira@metrickesq.com

32

<u>Jury Demand</u>

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Javier L. Merino*
Javier L. Merino
DANN & MERINO, P.C.

33